JACKSONVILLE, TAMPA AND KEY WEST RAILWAY COMPANY, APPELLANT, VS. FREDERICK A. GARRISON, APPELLEE.

1. Under the act of 1887, Chapter 3740, Laws of Florida, the killing of live stock by a railway engine, cars or train is *prima facie* evidence of negligence on the part of the company operating the engine or train, and where the testimony shows that live stock was killed by a train of cars on a railroad, and there is nothing in the evidence to relieve the killing from the statutory presumption that it was negligently done, it is sufficient to sustain a judgment against the company.

2. The findings of a referee on the facts will be accorded in the appellate court the same weight and consideration as the verdict of a jury, where the testimony is conflicting, involving the credibility of witnesses.

3. The finding of a referee as to the value of property not in excess of the market value as shown by clear and uncontradicted evidence, will not be set aside on the ground that it is excessive.

Appeal from the Circuit Court for Putnam county.

The facts of the case are stated in the opinion of the court.

*J. R. Parrott* for Appellant.

*Geo. P. Fowler* for Appellee.

MABRY, J. :

This action was commenced in the Circuit Court for Putnam county, on the 25th day of November, A. D. 1887, by the appellee against the appellant company, for the alleged negligent killing of a certain "Guernsey cow," the property of appellee. The essential allegations of the declaration are, that the said company "on the 3rd day of December, A. D. 1886, at, to-wit: The county and state aforesaid, was possessed of and using and operating a certain railroad known and called the Jacksonville, Tampa and Key West Railway, being situated and operated through a portion of the county aforesaid, and so using and operating said railway with its cars, trains and locomotive engines, the said defendant then and there drove a certain locomotive engine and train upon, over and along said railway, to-wit: The 10 o'clock A. M. passenger train going south from Palatka, in the county aforesaid, the said locomotive engine and train of cars, then and there being run, governed and operated by divers agents of said defendant so carelessly and negligently about two miles south of said Palatka, at a point or place where a wide ditch runs on either side

of said railway track, the said locomotive engine then and there drawing said train of cars over and along said railway track, then and there ran and struck upon and against a certain 'Guernsey cow,' the property of plaintiff, which had strayed and went upon the said railway track of defendant at the point aforesaid, by means whereof the said 'Guernsey cow was so badly hurt and injured that she could not recover from the injuries received as aforesaid, and was then and there killed by employes and agents of said defendant." It is further alleged in the declaration that said cow was between three and four years old, of reddish color and short peculiar horns, was then in good condition and a cow of great value. The damage alleged is three hundred and fifty dollars.

The pleas interposed by the company were, first, not guilty; second, "that if said accident happened as alleged, that it was by and through the careless and negligent conduct of the plaintiff; and, third, "that plaintiff has not suffered any loss or damage for which the defendant is liable."

The case was referred to T. S. Houghton, as referee, who, after hearing the evidence introduced by both parties, rendered judgment on the 26th day of December, A. D., 1888, in favor of the plaintiff below, appellee here, for three hundred and fifty dollars. From this judgment an appeal has been taken by the company to this court, and the errors assigned are: 1. The finding and judgment are contrary to law; 2. The finding and judgment are contrary to the evidence;

3. The finding and judgment are excessive; 4. The court erred in refusing defendant's motion for a new trial. The grounds of the motion for a new trial are the same as the first three assignments of error.

The only questions presented by the record for our consideration relate to the sufficiency of the evidence to sustain the judgment, and whether or not it is excessive. H. Chancey testified that he was in the employment of plaintiff during the month of December, 1886, and had charge of his cows. Among the cattle owned by plaintiff was a Guernsey cow, and she was killed on the Jacksonville, Tampa and Key West Railroad about two and one half miles south of Palatka, in Putnam county, on December 3rd, 1886. Witness did not see the train kill the cow, but he testified that he saw her next morning after she was killed, lying on the left hand side of the railroad going south, in the ditch about ten or twelve feet from the ties. with her head or leg mashed, he was not positive which. According to his statement, there was a ditch with water in it on the side of the track where the cow was killed for half a mile, with only one crossing to it, and and that the cow could not cross the ditch because it was too wide, and the water kept her from crossing. Plaintiff was in the habit of keeping his cows in his barnyard, but they ran on the range in the daytime. Witness says that he knew the cow well, and he describes her color as being yellow with a few white specks on her, with small, short horns, and states that her condition was good, and her market value was

three hundred and fifty dollars. On cross-examination he states that he knows the cow was killed on the 3d day of December, A. D. 1886, because he put it down at the time in his day-book which he had at his house, and this is the only means he had of knowing that it was on said date. He states that he came from Georgia to Florida, and before coming to the latter State he was on a stock farm in the former, where Jerseys, Guernseys and common cows were raised. That the ditch where the cow was killed was at least three feet deep and two feet wide, and there was, when the cow was found, about twelve inches of water in it. The cow was found dead about one and one-half miles south of Mr. Garrison's house, and about one-half mile south of Lundy station. Where the cow was found there was sign in the dirt where something had been dragged on the track, and the witness answered, "I would say it was the animal." He also stated that there was not much fine cattle in that section, and he knew of but one man who had any. This man lived four or five miles in the country, and had a pair of fine cows. Witness had seen his cows, and they were worth two or three hundred dollars, although not as good as plaintiff's cows.

Charles Battise, testifying for plaintiff, stated that he (witness) resided at Lundy station, two miles south of Palatka, and saw the 10 o'clock morning train going south knock the cow in question off the track; that he was about two hundred yards from the cow when the train struck her. He knew it was Mr. Gar-

rison's cow, and she was knocked off on the 3d day of December, 1886. The railroad that the train was on that struck the cow was the Jacksonville, Tampa and Key West. On cross-examination the witness says that his house was about two hundred yards from the railroad track, and he was at his house when he saw the train knock the cow off the track ; that he saw the cow after she was killed, when he crossed the railroad ; she was killed near 58-mile post, and there is a culvert there to let the water run off. He states that he knows that it was on the 3d day of December, 1886, because he always kept such things in his head, and had no other way of fixing this date in his memory. In reply to a question, he said that he did not remember the day he was born. He also says that when he first saw the cow she was down towards the station feeding beside the track.

The plaintiff testified that when he got home from his office, his men reported that they had not found the cow in question, and he sent them out next morning to look for her, and they came back with the information that she was dead. He put down the date, which was December 3d, 1886. He stated that the cow was shipped to him from Boston as a present, was of the Guernsey breed, and had peculiar short horns. The cow was between three and five years old, and she could not be duplicated in the Palatka market for five hundred dollars. He valued her in that market at three hundred and fifty dollars. Plaintiff did not see the cow after she was killed. The only

railroad he knew of that ran by his house. was the Jacksonville, Tampa & Key West. On cross-examination the witness stated that he would not swear positively that it was on the 3d day of December, 1886, that the cow was killed, but he would swear that it was on that date, to the best of his knowledge and belief; that the men working for him sometimes brought in the dates, and he took them from the men. He produced a memorandum book with the date in it, but stated it was a copy of the memorandum of the date made at the time the cow was killed, and that he did not have then in his possession the original memorandum.

For the defendant company, D. M. Shea was sworn, and stated that he had been locomotive engineer for eight years, and in December, 1886, was in the employment of the Jacksonville, Tampa & Key West Railway Company; that on the morning of December 3d, 1886, he ran a locomotive engine going south of Palatka, a little after 10 o'clock, and his train was known as the 10 o'clock train south. He states that he did not kill any stock on that trip; that he and his firemen were-on watch at the time and place where it was alleged the cow in question was killed, and they would have seen any cattle if they had been on the track; that they did not see any cattle; that the track is level after leaving Lundy station, and from said station south there isquite a long curve, and then the track is straight; that there were ditches where the cow was

alleged to have been killed, but he did not think they were filled with water at that time of the year. The witness stated that somewhere in that neighborhood near 58-mile post, he killed a cow on the 23d day of December, 1886; that his train was north bound, and the cow was killed fifteen minutes past five o'clock in the evening; that he did not have a chance to see the cow, as she ran out of the ditch on the fireman's side, and was first seen by him about 150 feet away; that he was watching the track at the time, and could not have stopped his train in less than 700 or 800 feet. He also states that his headlight was burning brightly and the engine was in the best repair, with the very best air brakes on. When he saw the cow he did not have time to do much, as she came from the left side, and he had shut off for Lundy station.

Reports, alleged to be original, signed by the witness as engineer, and made to the defendant company, for the second, third, fourth and twenty-fourth days of December, 1886, were introduced in evidence. The first three reports stated that no stock was killed on the dates represented by them, but the fourth report introduced, dated the 24th of December, 1886, represented that one red cow was killed near 57-mile post at 5:15 P. M. It also states that the animal was first seen 150 feet from the engine, and the reason why it was not seen sooner, was because it was dark, and it was impossible to stop. No whistle was sounded or air brakes applied. The fireman was also sworn for the defendant, and his testimony corroborates that of the engineer.

H. C. Loomis testified for defendant, that he was its section foreman in December, 1886, and in that month found some cattle between 57-and 58-mile posts belonging to Mr. Garrison, and that he reported all cattle found in said month. A report signed by the witness as foreman, and bearing date December 29th, 1886, was introduced in evidence, showing that one cow was killed north of 58-mile post about December 20th. The cow is described as being a Jersey, and the owner is stated to be. Garrison. The foreman states in the report that the cow had been killed a number of days when found, and he had not been able to learn the date or train. The witness Loomis further states that he did not know the difference between a Jersey and a Guernsey cow, and that he called the cow in question a Jersey. On cross-examination he states that he sometimes went to Buffalo Bluff, and sometimes the other way, and the last time he went to Buffalo Bluff he found the cow, and knew it was Mr. Garrison's because nobody else had such a cow; she was of a fawn color. He found her on the left hand side going south, in the ditch ten or twelve feet away. There was some testimony that Shea was a skillful engineer, and that no other reports of cattle killed between 57-and 58-mile posts in December, 1886, were made to the defendant company, except the ones in reference to the cow in question.

If the testimony introduced for the plaintiff before the referee is to be believed, the cow was killed in the day time by the 10 o'clock south bound train on the defendant's road, on the third day of December, 1886.

It will be noted that at this date the act of the Legislature passed in 1887, Chapter 3742, requiring railroads to fence their tracks was not in force. The trial of this case, however, took place after the act of 1887, Chapter 3740, went into effect, and by this act it is provided, "that in all cases in which live stock have heretofore been injured or killed by railway engines, cars, or trains within this State, and suit has been or shall hereafter be brought within three years after such killing or injuring to recover from the railroad company operating such engines, cars or trains, damages therefor, the fact of the injuring or killing of such live stock by such railway engines, cars or trains, when proven to the satisfaction of the jury on the trial of such suit, shall be *prima facie* evidence of negligence on the part of such railroad company." It is not contended here that the Legislature could not enact a law making the act of injuring or killing stock by a railway company on its road *prima facie* evidence of negligence, or that the act in question was not operative upon the remedy in the present case. The Supreme Court of Kentucky, in construing a statute that made the injuring or killing *prima facie* evidence of negligence, said in the case of Kentucky Central R. R. Co., vs. Talbot, 78 Ky., 621, 7 Am. & Eng. R. R. Cases, 585, that "in the absence of statutory provision to the contrary, the mere fact of killing is not enough to establish negligence. No one, while engaged in a lawful business, is responsible for inevitable accident resulting in injury, though the injury was the direct result or consequence of his own act;

and when it is sought to recover for negligence, the burden of proof to establish it is on the one affirming its existence. In such case evidence sufficient to raise a fair presumption of negligence is enough to shift the burden of proof to the defendant, but until such evidence is introduced, the party complaining is without standing in court. The statute quoted is in derogation of this rule, and grows out of the difficulty ordinarily supposed to exist with the plaintiff in making proof of facts presumed to be peculiarly within the knowledge of the defendant or its employes." *Vide* Chicago, St. Louis & N. O. R. R. Co. vs. Packwood, 59 Miss., 280; Mobile & Ohio R. R. Co. vs. Williams, 53 Ala., 595; L. R. & F. R. R. Co. vs. Payne, 33 Ark., 816; Savannah, Florida & Western Ry. Co. vs. Geiger, 21 Fla., 669.

Conceding that the act of 1887, Chapter 3740, *supra*, was in force, counsel for appellant contends that the company has shown that the cow was killed not on the third day of December, 1886, but on the 23rd day of that month, and that the circumstances attending the killing on the latter date rebut the *prima facie* presumption of negligence under the statute on the part of the company. There is in the evidence before us a palpable and irreconcilable conflict as to when the cow was killed. According to the testimony of the plaintiff below, the cow was killed on the third day of December, 1886, in the day time, and there is

nothing to relieve this killing, if such was the case, from the statutory presumption that it was negligently done. The finding of the referee is against the company on this evidence. In accordance with the well-recognized rule on this subject, we are not authorized to disturb his finding. His conclusions on the facts are to be given on appeal the same consideration and weight as would be given to the verdict of a jury. Where the testimony is conflicting, as in this case, involving the credibility of witnesses, we will not disturb the verdict of a jury. It is evident also that we can not set aside the finding of the referee on the ground that it is excessive. The plaintiff's testimony is pointed that the market value of the cow was three hundred and fifty dollars, and the defendant company has not offered any testimony to the contrary. The cow is claimed to be of fine quality, and we know of no rule of law that will authorize us to conclude, in the face of clear and positive evidence to the effect that she was worth three hundred and fifty dollars, that such was not the case. If the counsel for the defendant deemed the valuation put on the cow by plaintiff's witnesses excessive, he should have contested this point before the referee, by introducing evidence as to her true value, but not having done so, he is in no condition to ask an appellate court to set aside the judgment because it is excessive.

The judgment appealed from must be affirmed, and it is so ordered.